**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

**December 12, 2006**

Charles R. Fulbruge III
F I L E Clerk
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

No. 05-40859

DEC 1 5 2006

DAVID J. MALAND, CLERK
BY
DEPUTY _____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT E. NOLEN,

Defendant-Appellant.

--------------------
Appeal from the United States District Court
for the Eastern District of Texas
--------------------

Before JOLLY, DAVIS, and WIENER, Circuit Judges.

WIENER, Circuit Judge:

Defendant-Appellant Robert E. Nolen, a persistent "tax protester," was convicted on three counts of willfully attempting to evade the federal income tax in violation of 26 U.S.C. § 7201. On appeal, he contends that (1) the district court violated his Sixth Amendment rights when it revoked the pro hac vice admission of his retained counsel, (2) the evidence at trial was insufficient to establish the charged offense, because no tax obligation had been formally assessed, (3) the district court committed plain error by failing to require the jury to find an affirmative act other than willful failure to file returns and by failing to require the jury to find exactly the same affirmative act of

evasion that was charged in the indictment, and (4) the district court erred by ordering restitution in a case arising under Title 26 of the United States Code.

We conclude that (1) the district court erred in failing to demonstrate that it conducted the proper balancing of Nolen's Sixth Amendment rights (if it did so) when it revoked the pro hac vice admission of his counsel, making appellate review of that order impossible, (2) the trial evidence was sufficient to establish the charged offense, (3) the district court's jury instructions did not constitute plain error, and (4) the restitution order was improper.

## I. FACTS AND PROCEEDINGS

In 1992, Robert E. Nolen, a dentist practicing in Flower Mound, Texas, decided that he should no longer be subject to federal income taxation. Nolen filed an affidavit with the Clerk of Tarrant County, Texas declaring that although "tax is imposed upon the citizens and residents subject to the jurisdiction of the United States," he was a "'nonresident' to the residency and 'alien' to the citizenship of the 14th Amendment." Despite his accountant's warning that failure to pay federal income taxes "was illegal," Nolen remained resolute. He filed his last federal income tax return in October 1992 for the 1991 tax year.

Non-cash receipts from Nolen's dental practice were deposited into a business account from which all business expenses were paid. In contrast, Nolen instructed his office manager to give him all of

2

the cash receipts, which averaged $1,000 per month.   In December 1993, Nolen and his wife created an entity called Genesis Enterprises, an unincorporated business organization "domiciled in the sovereign Republic of Texas."   According to Nolen, the purpose of Genesis was to protect his assets from malpractice litigation. Nolen opened two new accounts, one in the name of  "PJ Consultants DBA Genesis Enterprises ABBA" ("the Genesis account"), and one in the name of "PJ Consultants DBA Max Man Holding Company" ("the Max Man account").[1]

Nolen instructed his office manager to transfer funds from the business account to the Genesis account, from which Nolen's personal expenses were paid.  Nolen failed to report as income, or pay tax on, the dental practice receipts that were used to pay his personal expenses.  He also falsely coded the transfers of money from the business account to the Genesis account as "professional fees."   Nolen gave his office manager authority to sign checks on the Genesis and Max Man accounts and began paying her an additional $1,000 per month (later increased to $1,800 per month).   Neither Genesis nor Max Man filed tax returns.

In October 1995, the IRS notified Nolen that it was aware of his failure to file returns for the past three years and requested

---

[1] The Max Man account held funds transferred from the business account for maintenance of the building in which Nolen practiced dentistry, which he owned.  Those funds are not at issue in this case.

3

that he meet with agents and produce his financial records.  Nolen did not attend that meeting and later disregarded a second such request.  Eventually, the IRS served Nolen with an administrative summons, ordering him to appear and produce records.  Nolen disregarded that summons as well.

In June 1996, Nolen converted his dental practice from a corporation to a sole proprietorship, changed its name, and opened a new business bank account.  Thereafter, the practice did not file tax returns.  Nolen then altered the name of the Genesis bank account and removed his and his wife's names from it.  Nolen still controlled the checkbook, however, by using a signature stamp created for one of the account signatories.

In December 1996, the district court issued an order requiring Nolen to appear and show cause why he should not be ordered to comply with the IRS administrative summons.  Nolen failed to appear at that hearing and was finally detained by U.S. Marshals.  He then filed a petition to quash the summons, stating that he was not a citizen or resident of the United States.  The district court enforced the summons and ordered Nolen to appear before the IRS and produce the requested records.  He appeared at that hearing but refused to produce any records.

In September and November 1997, the IRS sent Nolen delinquency notices, demanding that he file tax returns and pay unpaid taxes.  Thereafter, Nolen moved the Genesis account to a different bank and

4

listed his office manager as the sole account holder.  He continued to transfer funds from the dental practice's business account to the Genesis account and to use funds from the Genesis account to pay his personal expenses.  In September 1998, the IRS sent Nolen notices of deficiency for tax years 1992, 1993, and 1994.  After that, Nolen removed his name as a signatory on the business bank account but continued to own and control the funds in that account.

At some point in 1997, Nolen began consulting with various attorneys and accountants, seeking their advice as to what strategies he should employ to "resolve" his IRS issues.  On the advice of his attorneys, Nolen began to pursue a series of document requests and related civil lawsuits against the IRS.  Between March 1999 and April 2002, while this frustration-litigation strategy was playing out, Nolen made a series of $500 payments to the IRS, as a "bond" against determination of tax liability.  In July 2003, a grand jury sitting in the Eastern District of Texas returned a three-count indictment charging Nolen with willfully attempting to evade federal income taxes for the years 1997, 1998, and 1999.

Nolen retained a California attorney, Roger Agajanian, and the district court granted Agajanian's motion for admission pro hac vice.  In September 2003, the government filed a motion for inquiry into whether Nolen was receiving the effective assistance of counsel guaranteed by the Sixth Amendment.  The government alleged that a legal assistant, Lawrence Maxwell, had been conducting all

5

or part Nolen's defense in Agajanian's name but without his control. The magistrate judge conducted a hearing and expressed concern about Maxwell's conduct and whether Nolen was receiving the effective assistance of counsel. The magistrate judge also stated that he took offense at some of the language in Nolen's pretrial motions challenging federal jurisdiction. The magistrate judge then appointed an experienced criminal defense attorney from the Eastern District of Texas, Gerald Cobb, to serve as Agajanian's co-counsel. The magistrate judge entered an order directing Agajanian to cooperate with Cobb or face removal from the case.

Nolen moved the district court to review the magistrate judge's order, and the district court initially affirmed the order but later granted Nolen's motion for reconsideration and terminated Cobb's appointment as co-counsel. Agajanian then refiled some pleadings that Maxwell had authored previously, together with a new motion to dismiss for lack of jurisdiction, arguing that the United States does not exist in any capacity to bring a criminal prosecution. The government then moved for a hearing to require Agajanian to show cause why his pro hac vice admission should not be revoked. The district court scheduled a show-cause hearing for December 2003. At that hearing, Nolen advised the court that his defense was based on Maxwell's research and advice, and that he did not want Agajanian as his attorney if Maxwell could not assist in his defense. The court scheduled another hearing for January

6

2004, at which time Nolen was to advise the court of the identity of his new attorney if he still wanted Agajanian to withdraw. Ultimately, Agajanian filed a motion to withdraw, which the district court granted.

Nolen subsequently retained attorney John Green, who entered an appearance in March 2004. Green, who was admitted to practice in other federal courts in Texas but not in the Eastern District, was admitted pro hac vice. He then filed a motion for continuance that contained a footnote in which he alleged that the magistrate judge's asserted reason for appointing Cobb as co-counsel was false:

> Magistrate Bush *claimed* [that ensuring that Nolen received effective assistance of counsel] was his *basis* for appointing Gerald Cobb as *court-appointed counsel.* Though we know now that was NOT the basis for the appointment (or it would not have been done the way it was done and later REVERSED by the trial court after multiple requests for de novo review and motions to reconsider — a huge waste of defense resources and time), a GRANT of this continuance and the 180 days sought by the defendant to properly prepare for trial would go a long way toward *correcting* the amazing number of inequities that have already occurred in this case.[2]

At a hearing on several motions in April 2004, Green ratified his accusations about the magistrate judge's reasons for appointing Cobb. In an order entered later that month, the district court granted a four-month continuance. In that order, the court noted

---

[2] Emphasis in original.

that it had taken under advisement defense counsel's statements about the magistrate judge's honesty.

In May 2004, the district court, sua sponte, ordered Green to show cause why his pro hac vice admission should not be revoked for violating the district court's Local Rule AT-2, which incorporates the Texas Disciplinary Rules of Conduct. The court was particularly concerned that Green's comments about the magistrate judge violated Rule 8.02 of the Texas Disciplinary Rules ("Rule 8.02"), which states, in pertinent part, that "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge."[3] The district court conducted the show-cause hearing in June of 2004 and subsequently entered an order revoking Green's pro hac vice admission and barring him from practice in the Eastern District of Texas for five years. The district court determined that Green violated Rule 8.02 because (1) his accusation that the magistrate judge falsely stated his reasons for appointing Cobb constituted a statement concerning the integrity of a judge, and (2) that statement was at least "recklessly false" because Green had no basis on which to question the integrity of the magistrate judge.

---

[3] Rule 8.02 adopts the exact language of Rule 8.2 of the ABA Model Rules of Professional Conduct,

Nolen sought review of the district court's order in this court and did not begin searching for a new lawyer until his interlocutory appeal was denied in October 2004. Finally, in November 2004, only three days before trial, yet a third attorney, Justin Low, entered his appearance as Nolen's counsel. The district court denied Low's motion for a continuance, and Nolen was tried as scheduled.

At trial, an IRS agent testified that Nolen owed income tax of $66,095 for 1997, $74,138 for 1998, and $60,338 for 1999. The jury found Nolen guilty of willfully attempting to evade federal income taxes for those years, and he was sentenced to 37 months imprisonment and three years supervised release. He also was ordered to pay a $60,000 fine and $435,275 in restitution to the IRS.

## II. **ANALYSIS**

A. Revocation of Green's Pro Hac Vice Status

Nolen contends that the district court erred in three respects when it revoked Green's pro hac vice admission: (1) by placing the burden of proof on Green to show that he had not violated Rule 8.02; (2) by interpreting Rule 8.02 to reach Green's conduct in this case; and (3) by failing to balance the need to enforce Rule

8.02 against Nolen's Sixth Amendment right to the counsel of his choice.[4]

## 1.   Standard of Review

Courts enjoy broad discretion to determine who may practice before them and to regulate the conduct of those who do.  Our inquiry, then, must focus on whether the trial court's revocation of Green's pro hac vice admission constituted an abuse of discretion.[5]  In making that inquiry, we review the district court's findings of fact for clear error and its application of the relevant rules of attorney conduct de novo.[6]

## 2.   Merits

### a.   Procedure for Disciplinary Action

In the Eastern District of Texas, the procedure for court-initiated disciplinary action is as follows:

> When it is shown to a judge of this court that an attorney has engaged in conduct which [sic] might warrant disciplinary action, the judge receiving the information shall bring the matter to the attention of the full court as to whether disciplinary proceedings should be held. If the court determines that further disciplinary proceedings are necessary, the court will notify the

---

[4] We cannot help but notice the irony of Nolen's invoking the United States Constitution while insisting that he is not a citizen or resident of the United States but of the "Republic of Texas," and rejecting the authority of the United States to charge and try him criminally.

[5] United States v. Dinitz, 538 F.2d 1214, 1219 (5th Cir. 1976).

[6] United States v. Snyder, 707 F.2d 139, 144 (5th Cir. 1983).

> lawyer of the charges and give the lawyer opportunity to
> show good cause why he or she should not be suspended or
> disbarred.    Upon the charged lawyer's response to the
> order to show cause, and after a hearing if requested or
> upon expiration of the time prescribed for a response if
> no response is made, the court shall enter an appropriate
> order.[7]

In this case, The district judge faithfully followed the
appropriate procedure.  Having taken notice of Green's possible
violation of Rule 8.02, the district judge brought it to the
attention of the full court, which concurred in the decision to
conduct disciplinary proceedings.  Green was then notified that he
was facing a possible sanction, and a hearing was set to afford him
the opportunity to show good cause why he should not be
disciplined.

### b.   Burden of Proof

Nolen contends that the district judge erroneously interpreted
either Rule 8.02, or the "show cause" procedure itself, as placing
the burden on Green to prove the truth of his allegedly unethical
assertions about the magistrate judge.  Nolen bases his contention
on an exchange between Green and the district judge at the show
cause hearing.  Green asserted that he did not have the burden of
proving that his statements about the magistrate judge were true,
to which the district judge responded, "In this case, you do,

---

[7] E.D. Tex. R. AT-2(d)(2)(A).

because you've made a statement about the integrity of a judge."
The judge further stated, "You cannot make a statement, a reckless
statement, about the integrity of the Court, questioning its
motives and impugning the Court's integrity, unless you have rock-
solid proof that the Court acted with improper motives."  Finally,
the district judge asserted that when an attorney alleges that a
judge uttered "an untruth -- then, really, you've got to show why
you think such a statement . . . is true."

We have long recognized that, in court-initiated disciplinary
proceedings, "show cause orders do not in fact shift the burden to
the attorney, rather such proceedings merely provide the attorney
with his constitutionally guaranteed opportunity to confront the
government's evidence and rebut the same."[8]  In Sealed Appellant 1,
we clarified that "the burden of proof remained at all times with
the United States Attorney."[9]  Once evidence of unethical conduct
has been presented, however, the burden shifts to the attorney
facing discipline, who must be given an opportunity to rebut or
disprove that evidence.  Only after weighing all the evidence may
the district court decide whether a sanction is warranted.

Here it was the district judge and not the government who
initiated disciplinary action after presenting his concern about

---

[8] Sealed Appellant 1 v. Sealed Appellee 1, 211 F.3d 252, 255
(5th Cir. 2000).

[9] Id.

12

Green's statements to the full district court. At the time of the show-cause hearing, the district judge had already determined that Green's statements regarding the magistrate judge impugned the integrity of the court. The only purpose for holding the show-cause hearing was to determine whether Green's statements were knowingly false or made with reckless disregard for the truth. On this point, the district judge took the position that (1) any accusation that a judge lied about his reasons for a ruling would be regarded as presumptively false or made with reckless disregard for the truth, and (2) to avoid being disciplined, an attorney who makes such a statement must be able to provide evidence sufficient to justify his good-faith belief in the truth of those assertions. Accordingly, Green could avoid discipline only by producing some affirmative evidence to support his contention that the magistrate judge had lied about his reasons for appointing co-counsel to assist Nolen's original attorney.

We find no fault with the district judge's position on this issue. He did not shift to Green the burden of proving his non-violation of Rule 8.02 in the first instance, but required only that Green rebut the presumptively sufficient evidence of his unethical conduct already before the court.[10]

---

[10] It is noteworthy that the district judge employed the same procedure in this case as was followed in a court-initiated lawyer discipline case Nolen himself cites, albeit for a different proposition. In that case,
> The district court also concluded that

13

c.   Factual Basis

Nolen also contends that there is no factual basis for the district court's conclusion that Green's statements were false or made with reckless disregard for the truth.   Nolen suggests that some of the comments made by the magistrate judge on the record justified Green's good-faith belief that the magistrate judge decided to appoint co-counsel for Nolen's original attorney because of a desire to control the litigation and not out of concern that Nolen receive effective assistance of counsel, as stated in the ruling.   Specifically, Nolen points to several references by the magistrate judge to the spurious or frivolous nature of motions filed on Nolen's behalf.

The district judge found that the comments by the magistrate judge referenced by Green did not provide a sufficient basis for Green's good-faith belief in the truth of his statements impugning

_____

> Kidd [in his pleadings] had violated Rule
> 8.2(a) of the Rules of Professional Conduct
> of the Louisiana State Bar Association,
> pertaining to remarks about a judge that are
> false or made with a reckless disregard as to
> their truth or falsity.   The court set a
> hearing for Kidd to show cause why he should
> not be sanctioned for his conduct.
>         At the hearing on the order to show
> cause, the district court instructed Kidd to
> explain or give examples in the record to
> support his allegations of judicial bias.

United States v. Brown, 72 F.3d 25, 27-28 (5th Cir.
1995)(construing the scope of Louisiana's identical version of
the same ethical rule).

14

the magistrate judge's integrity.  We will not disturb the district judge's finding on this matter now.  The magistrate judge was obviously frustrated by some of the pleadings filed by Agajanian, Nolen's original attorney; but, when viewed in the context of the entirety of the proceedings before him, the magistrate judge's comments are far from compelling indicia of any mendacity in his stated reasons for appointing co-counsel.  Accordingly, we hold that the district judge's determination that Green's statements (1) impugned the magistrate judge's integrity, and (2) were either knowingly false or made with reckless disregard for the truth, was not clearly erroneous.

> d.   Legal Basis

> i.   Scope of Rule 8.02

Nolen also contends that no legal basis exists for the district court's ruling revoking Green's <u>pro hac vice</u> status.  Specifically, Nolen argues that Rule 8.02, if properly construed and applied, does not reach the conduct for which Green was sanctioned.  Nolen cites <u>United States v. Brown</u>[11] for the proposition that Green's statements about the magistrate judge are not the kind that Rule 8.02 is designed to address.  <u>Brown</u> involved an appeal by a defense attorney who was suspended and fined by the district court for stating, in a motion for a new trial, that the district judge had permitted the

---

[11] 72 F.3d 25 (5th Cir. 1995)(construing Louisiana's identical version of Rule 8.02).

jury to perceive that he favored the prosecution's case.[12]   We reversed the district court's sanction order, holding that "Rule 8.2's restriction on reckless statements regarding members of the judiciary does not apply to a lawyers in[-]court comments concerning the judge's actual performance during the conduct of the trial," but rather "solely proscribes false or reckless statements questioning judicial qualifications or integrity (usually allegations of dishonesty or corruption)."[13]  We also noted that "[n]othing in [the ABA commentary accompanying the rule] intimates that the rule is to be applied . . . to a lawyer's criticism of a judge's handling of a trial in which the lawyer was involved made in papers filed with that same court in the same proceeding."[14]   Even though we did recognize in Brown that "such comments could arise in the trial context," we cautioned trial courts to "be careful to distinguish frivolous motions on the appearance of partiality from attacks on the character of the court."[15]

Nolen argues that "this Court in Brown did not mean to include, within 'dishonesty or corruption,' an accusation of disingenuity in a court's legal analysis."   Perhaps not, but Nolen's characterization of Green's statements as "an accusation of

---

[12] Id. at 27

[13] Id. at 28-29.

[14] Id. at 29.

[15] Id.

disingenuity in a court's legal analysis" is crucially misleading. Green did not ascribe mendacity to the magistrate judge's "legal analysis"; he plainly accused him of giving false reasons for his ruling based on that analysis.  We cannot read <u>Brown</u> so broadly as to foreclose the possibility that such obvious allegations of judicial dishonesty may constitute a violation of Rule 8.02.

Furthermore, even though Green, like the attorney in <u>Brown</u>, included his accusations in a motion filed in the same action in which the alleged judicial misconduct occurred, we made clear in <u>Brown</u> that it is the <u>nature</u> of the statements made and not the <u>context</u> in which an attorney makes them, that determines whether Rule 8.02 applies.[16]  Allegations that a judge has mishandled a trial are beyond the reach of Rule 8.02, but allegations of judicial "dishonesty" are not.[17]  In this case, Green's statements undoubtedly impugned the honesty of the magistrate judge.  Green's motion stated that the magistrate judge gave false reasons for his ruling, and Green ratified that position at the show-cause hearing when he accused the magistrate judge of having acted "for impure motives" and claimed that to have proven that the magistrate judge had "lied."  The import of these accusations is compounded by the fact that they involve the magistrate judge's official reasons for a ruling, and therefore, directly implicate the "integrity" of the

---

[16] <u>Id.</u>

[17] <u>Id.</u>

17

district court.   Green's conduct here cannot be equated with the allegations   of   perceived   partiality   at   issue   in   Brown. Accordingly, we find no error in the district court's determination that Green's statements in this case came within the purview of Rule 8.02 — and violated it.

### ii.   Rule 8.02 as Basis for Revocation of Pro Hac Vice Status

Nolen   also   insists   that,   even   if   Green's   statements constituted a violation of Rule 8.02, that violation did not warrant revocation of his pro hac vice status.  We noted above that district courts have wide discretion to redress ethical violations committed by attorneys admitted to practice before them.[18]  Having found no error in the district court's determination that Green's statements in this case violated Rule 8.02, we review the district court's chosen sanction for an abuse of discretion.[19]

In In Re Evans, we set forth the standard for denying an attorney pro hac vice admission to practice before a district court:

> An applicant for admission pro hac vice who is a member in good standing of a state bar may not be denied the privilege to appear except "on a showing that in any legal matter, whether before the particular district court or in another jurisdiction, he has been guilty of unethical conduct of such a nature as to justify

---

[18] United States v. Dinitz, 538 F.2d 1214, 1219 (5th Cir. 1976).

[19] Brown, 72 F.3d at 28.

18

> disbarment of a lawyer admitted generally to the bar of the court."[20]

In <u>United States v. Dinitz</u>, however, we recognized that fewer limitations should be placed on the inherent authority of the district court to <u>revoke</u> an attorney's <u>pro hac vice</u> status once that attorney has been admitted to practice before the court.[21]   In <u>Schlumberger Tech. v. Wiley</u>, the Eleventh Circuit noted that revocation cases generally fall into one of two categories: (1) those involving attorney conduct that challenges the court's authority or threatens disruption of court proceedings, and (2) those involving allegedly unethical attorney conduct that does not threaten the orderly administration of justice.[22]   This case indisputably belongs in the second category.   In that class of revocation cases, "the court may not simply rely on a general inherent power to admit and suspend attorneys," but "must clearly identify a specific Rule of Professional Conduct which [sic] is applicable to the relevant jurisdiction and must conclude that the attorney violated that rule."[23]

---

[20] 524 F.2d 1004, 1007 (5th Cir. 1975)(quoting <u>Sanders v. Russell</u>, 401 F.2d 241, 247-48 (5th Cir. 1968).

[21] 538 F.2d 1214, 1223-24 (5th Cir. 1976)(holding that once an attorney is admitted and trial proceedings have begun, "considerations are quite different" and "[t]he interests of justice demand that a judge have a measure of discretion" to regulate attorney conduct).

[22] 113 F.3d 1553, 1561 (11th Cir. 1997).

[23] <u>Id.</u>

We agree with the Eleventh Circuit that once a district court has admitted an attorney to practice before it pro hac vice, it may revoke that attorney's admission if, after following the proper disciplinary procedure, it concludes that the attorney violated a clearly identifiable ethical rule.   Inasmuch as that is what the district court did in this case, we are satisfied that it did not abuse its discretion.   Our inquiry, however, cannot end here.

    e.   Sixth Amendment Balancing

    We have long recognized that, in criminal prosecutions, "the Sixth Amendment requires the courts to respect a defendant's own particular choice of counsel."[24]   And even though a "defendant's right to counsel is not absolute and must yield to the higher interest of the effective administration of the courts,"[25] we have held that "acts which [sic] appear to violate the ABA Code or other accepted standards of legal ethics do not confer upon the trial court unfettered discretion to disqualify the attorney selected by the party."[26]   An attorney representing a defendant in criminal proceedings may be disqualified for violating an applicable ethical

---

[24] United States v. Dinitz, 538 F.2d 1214, 1219 (5th Cir. 1976).

[25] United States v. Kitchin, 592 F.2d 900, 903 (5th Cir. 1979); United States v. Snyder, 707 F.2d 139, 145 n.5. (5th Cir. 1983)("[I]n some cases, the public interest in maintaining the integrity of the judicial process may outweigh the right of the defendant to counsel of his choice.").

[26] Kitchin, 592 at 903.

rule only if, "in light of the interests underlying the standards of ethics, the social need for ethical practice outweighs the party's right to counsel of his choice."[27]   Conducting such a balancing is thus a prerequisite to disqualifying counsel of defendant's choice, and explicating the process on the record is a prerequisite to appellate review.

In this case, the record contains nothing to indicate that the district court gave any consideration to Nolen's Sixth Amendment rights when it sanctioned Green by terminating his right to practice.   At the show cause hearing, the district court simply stated that:

> [W]hen you state in writing in a publicly-filed document that a judge was not telling the truth when he stated on the record his reason for taking some action, . . . then in my opinion, you have attacked the integrity of that judge and you have crossed the line between respectful disagreement and a violation of Rule 8.02 of the Texas Disciplinary Rules of Conduct.   This court has an obligation to uphold the integrity of the judiciary and the principles of civility and professionalism set forth in the Texas Disciplinary Rules of Conduct as well as Local Rule AT-3.

This court finds that you have violated Rule 8.02 . . . .  Your pro hac vice admission is revoked in this case[,] and you are barred from admission to practice in this court for a period of five years, effective immediately.[28]

We do not mean to suggest that, in making its ruling, the district court was not mindful of Nolen's constitutional rights, or

---

[27] Id. at 903 (citing Woods v. Covington County Bank, 537 F.2d 804, 810, 813 (5th Cir. 1976)).

[28] The court's written order is essentially identical.

may not have balanced those rights against the interests of
maintaining respect for the judicial system. We mean only that the
court's written and oral orders fail to mention Nolen's Sixth
Amendment rights at all, much less as a factor that the court
considered in determining the appropriate sanction for Green's
conduct. In the absence of any indication that the district court
balanced Nolen's Sixth Amendment rights against the interests
underlying the rules governing attorney conduct, we have no choice
but to conclude that the district court abused its discretion.[29]
Accordingly, we have no choice but to suspend our determination
whether revoking Green's <u>pro hac vice</u> status constituted reversible

---

[29] Even though it is likely unnecessary, we reiterate the
observation we made in <u>United States v. Walker</u>:

> "[A]buse of discretion" is a phrase which
> sounds worse than it really is. All it need
> mean is that, when judicial action is taken
> in a discretionary matter, such action cannot
> be set aside by a reviewing court unless it
> has a definite and firm conviction that the
> court below committed a clear error of
> judgment in the conclusion it reached upon a
> weighing of the relevant factors." <u>In re</u>
> <u>Josephson</u>, 218 F.2d 174, 182 (1st Cir.1954).
> The term "does not imply intentional wrong or
> bad faith, or misconduct, nor any reflection
> on the judge." Black's Law Dictionary (5th
> ed. 1979) at 10. The capable district judge
> fairly and competently tried this difficult
> and doubtless often vexing case. Upon a
> weighing of the relevant factors, we simply
> have the definite and firm conviction that,
> in this one particular, []he clearly erred.

772 F.2d 1172, 1176, n.9 (5th Cir. 1985).

error and remand the matter for reconsideration by the district court, specifically for it to conduct and verbalize the necessary balancing analysis.

B.   Sufficiency of the Evidence

   1.   Standard of Review

In addition to his Sixth Amendment claim, Nolen asserts that the evidence presented against him was insufficient to support his conviction for tax evasion.  As Nolen did not move for a judgment of acquittal on this ground, we review his claim of insufficient evidence only to determine whether the "record is devoid of evidence pointing to guilt."[30]

   2.   Merits

Nolen was convicted of violating 26 U.S.C. § 7201, which criminalizes "willfully attempting in any manner to evade or defeat any tax imposed by this title or the payment thereof."[31]   The Supreme Court has held that § 7201 "includes the offense of willfully attempting to evade or defeat the assessment of a tax as well as the offense of willfully attempting to evade or defeat the payment of a tax."[32]   "The elements of both offenses are the same: (1) willfulness, (2) existence of a tax deficiency; and (3) an

---

[30] United States v. Herrera, 313 F.3d 882, 885 (5th Cir. 2002) (en banc).

[31] 26 U.S.C. § 7201 (emphasis added).

[32] Sansone v. United States, 380 U.S. 343, 354 (1965) (emphasis in original).

affirmative act constituting an evasion or attempted evasion of the tax."[33]   Nolen contends that, at the government's request, the district court charged the jury solely on the second theory encompassed by § 7201, i.e., evasion of payment of tax.

The district court told the jury that "Title 26, United States Code, section 7201, makes it a crime for anyone willfully to attempt to evade or defeat the payment of federal income tax." Nolen contends that, by using only the term payment in its summary explanation of § 7201, the district court "permanently narrowed the possible basis of conviction, and thus of affirmance" to only one of the two kinds of evasion recognized by the Court in Sansone, namely the evasion of payment of income tax.  He suggests further that a formal assessment is a necessary element of that offense, and that the absence of such an assessment renders the trial record "devoid of evidence pointing to guilt" for that offense, requiring in turn that we reverse his convictions, even under our narrow standard of review.   This syllogism is clever but flawed and therefore unavailing.

We reject Nolen's contention that the district court's instruction narrowed the basis of conviction to only an "evasion of payment" of taxes.   To accept that argument we would have to disregard (1) the indictment, (2) the case as actually tried by the

_____

[33] United States v. Hogan, 861 F.2d 312, 315 (1st Cir. 1988) (quoting Sansone, 380 U.S. at 351).

government, and (3) the entire remainder of the jury charge, all of
which demonstrate beyond cavil that Nolen was tried for the general
offense of tax evasion, which occurs when one evades <u>either</u> the
assessment <u>or</u> the payment of taxes owed.

     a.   The indictment

Nolen was indicted for "willfully attempt[ing] to evade and
defeat the income tax due and owing by him . . . by failing to make
an income tax return . . . by failing to pay to the Internal
Revenue Service said income tax, and by concealing his income."  We
made clear in <u>United States v. Masat</u>, that when, as here, an
indictment closely tracks the wording of § 7201, there is "one
crime" charged, "the evasion of taxes," and that crime occurs when
either the assessment or the payment of taxes owed is evaded.[34]
Nolen does not dispute that, as written, the scope of this
indictment is not limited to the specific offense of "evasion of
payment."

     b.   The government's proof at trial

The trial record makes clear that the government offered
evidence that Nolen (1) earned taxable income, (2) owed substantial
income tax, (3) knew that he was required to file an income tax

---

[34] 896 F.2d 88, 91 (5th Cir. 1990)("The charge in the
indictment directly tracked the wording of § 7201. The 'two
crimes' of which Masat contends he was charged come from one
statute, indeed, from one sentence. In truth, there is one crime,
the evasion of taxes . . . .").

return, (4) wilfully failed to file an income tax return, (5)
failed to pay any income taxes, and (6) willfully attempted to
evade the tax he owed.  We are satisfied that, at least as far as
the government's conduct of the prosecution during trial, this case
was not limited to the specific offense of "evasion of payment" of
taxes.  Rather, it was prosecuted and tried, as stated in the
indictment, as a full-blown "tax evasion" case, encompassing both
the evasion of assessment and the evasion of payment of taxes.  The
government's presentation of its case at trial also raises serious
doubts about Nolen's assertion that the jury instruction suggested
to the district court by the prosecution limited its case to only
an "evasion of payment" case, rendering meaningless most of the
evidence the government offered at trial.

c. The jury instruction

The district court began the substantive portion if its jury
instruction as follows:

Title 26, United States Code, section 7201, makes it
a crime for anyone willfully to attempt to evade or
defeat payment[35] of federal income taxes. . . .

For you to find the defendant guilty of this crime,
you must be convinced that the government has proved each
of the following beyond a reasonable doubt:

First, that the defendant received gross income of
$12,200 or more . . .

Second, that the defendant failed to file an income-
tax return . . .

---

[35] Emphasis added.

26

Third, that the defendant knew he was required to file a return;

Fourth, that the defendant's failure to file was willful;

Fifth, that the defendant owed substantial income tax;

Sixth, that the defendant failed to pay the substantial income tax owed to the Internal Revenue Service; and

Seventh, that the defendant willfully attempted to evade or defeat such tax.

. . . . .

The word "attempt" contemplates that the defendant had knowledge and understanding that . . . he had income which was taxable and which he was required by law to report, but he nevertheless attempted to evade the tax . . . on that income by willfully concealing income which he knew he had during that year.

Nolen isolates the first sentence of this instruction to support his contention that the district court limited the jury's basis of conviction under §7201 to only whether the government had proven that Nolen attempted to evade "payment" of taxes. As discussed above, however, the law is clear that §7201 criminalizes evasion of <u>either</u> assessment <u>or</u> payment of taxes,[36] and we do not read the district court's use of "payment" in its explanation of § 7201 to indicate any intent to narrow the scope of the statute's application in this case. Neither do we see the district court's word choice as constructing any such limitation as a matter of law.

------

[36] <u>Sansone</u>, 380 U.S. at 354.

Moreover, by instructing the jury to consider whether Nolen had "failed to file an income tax return" or "knew that he was required to file a return," and by clarifying that "concealing income" could amount to "evasion," the district court left no doubt that § 7201 extended to any and all efforts Nolen may have made to avoid assessment as well as payment of income tax.

Finally, even if we were to characterize Nolen's conviction as a one for "evasion of payment" of taxes only, we would not be constrained to reverse for lack of a formal administrative tax assessment. Without unnecessarily straying down a road we need not travel, we observe that the entirety of the caselaw on this issue provides less than compelling support for Nolen's position. As the Third Circuit recently recognized in a case argued by Nolen's appellate counsel, "the weight of authority favors [the] view that an assessment is not required to prove attempted evasion of payment under § 7201."[37]  The converse is indisputably true.  In any event, we certainly need not deign to settle the matter for this Circuit on the basis of the facts presented here, and we reiterate our rejection of Nolen's attempt to position his case solely within the rare and factually distinct "evasion of payment" subset of § 7201 prosecutions.

C.    Jury Instructions

___

[37] United States v. Farnsworth, 456 F.3d 394, 403 (3d Cir. 2006)(addressing the same argument and authorities Nolen offers in this case)(emphasis added).

On appeal, Nolen asserts that the district court's jury instructions constituted plain error in two respects. One is the absence of a requirement to find an affirmative act of evasion; the second is constructive amendment of the indictment.

### 1. Affirmative Act of Evasion

Nolen first asserts that the district court committed plain error by failing to instruct the jury that it must find an affirmative act of evasion beyond any willful omission of duty (willful failure to file a return or pay taxes). As Nolen did not timely object to the jury instructions, we review any possible misstatement of the elements of tax evasion for plain error.[38]

The mere failure to pay a tax voluntarily when due, even if willful, does not establish a criminal attempt to evade. "The difference between the [felony of attempted evasion of payment and the misdemeanor of willful failure to pay] is found in the affirmative action implied from the term 'attempt,' as used in the felony."[39] "That is, a felony tax evasion requires willful *commission*, whereas the misdemeanor merely requires willful *omission*."[40] The government must prove "a willful attempt to defeat and evade" involuntary or forced payment, by means of "conduct, the

---

[38] Fed. R. Crim. P. 52(b).

[39] Spies v. United States, 317 U.S. 492, 498-99 (1943).

[40] United States v. Doyle, 956 F.2d 73, 75 (5th Cir. 1992) (emphasis in original).

29

likely effect of which would be to mislead or conceal," as long as "the tax-evasion motive plays any part in such conduct."[41]   "[A] defendant is entitled to a charge which [sic] will point out the necessity for such an inference of willful attempt to defeat or evade tax from some proof in the case other than that necessary to make out the misdemeanors."[42]

Nolen complains that the court did not explicitly instruct the jury that the concealment required for tax evasion could not be established merely by showing that Nolen had willfully failed to file a required return or to pay taxes owed; there had to be an additional, affirmative act of concealment.  He contends that the district court should have specified that the "concealing" to which it referred was the same type of concealment alleged in the indictment (concealing income by placing funds that constituted his income into misleadingly labeled bank accounts).  As the court failed to do so, he  argues, the jury might have thought that concealment of income through a mere failure to file or pay was a sufficient basis for conviction.  Nolen relies primarily on United States v. Masat,[43] and United States v. Nelson,[44] two cases in which

---

[41]  Spies, 317 U.S. at 499.

[42]  Id. at 500.

[43]  896 F.2d 88 (5th Cir. 1990).

[44]  791 F.2d 336 (5th Cir. 1986).

we reversed tax evasion convictions because of flawed jury instructions. We see both as distinguishable.

In Masat, the district court gave the jury a two-element charge, instructing that, to convict, the jury had to find that (1) "a substantial additional tax was due and owing," and (2) the defendant "knowingly and willfully attempted to evade or defeat such tax."[45] The jury then requested more specific guidance regarding whether a failure to file tax returns alone could constitute tax evasion.[46] We judged the court's responses to these queries to be flawed, because they "did not specify what was required in addition to failure to file, and left the impression that failure to file plus willfulness would be sufficient [to convict for tax evasion]."[47]

In Nelson, the district court instructed the jury that, "the affirmative act, as far as concealing is concerned, is that he filed no tax return at all."[48] We reversed the conviction because that instruction would "allow the jury to convict the defendant without finding 'some willful commission in addition to the willful

---

[45] 896 F.2d at 98 n.4

[46] Id.

[47] Id. at 99.

[48] 791 F.2d at 337.

31

omissions' proscribed by the misdemeanor statute of failing to file a return."[49]

According to Nolen, this precedent requires that, if the alleged evasive act is concealment, the trial court must instruct the jury that the mere failure to file or pay is insufficient to establish this element. He contends further that the court must specify that, to convict, the jury must find the same form of concealment charged in the indictment, (here disguising income by placing it in deceptive bank accounts, etc.). Nolen acknowledges that, in this case, the district court properly defined "attempt" as "willfully concealing income" but insists that it erred by failing to inform the jury that such concealment could not be established simply by showing that Nolen did not file or pay taxes.

The government counters that the jury instructions, when viewed as a whole, as they must be,[50] adequately informed the jury that a mere failure to act affirmatively was not an "attempt" and would not permit the jury to convict Nolen based solely on his failures to file returns or pay tax. Unlike what occurred in Masat or Nelson, the district court here gave the jury a seven-element charge on tax evasion and a separate instruction on the lesser

---

[49] Id. at 338.

[50] See United States v. Price, 877 F.2d 334, 338 (5th Cir. 1989)("Specific instructions may not be judged in artificial isolation, but must be viewed in the context of the overall charge, and the charge's correctness is measured not by isolated passages but in light of the charge as a whole.").

included misdemeanor offense of willfully failing to file a return.
The lesser-offense charge instructed the jury as follows:

> For you to find the defendant guilty of failure to
> file a tax return . . . the government must prove beyond
> a reasonable doubt that the defendant did everything we
> discussed before [elements of tax evasion] except that it
> did not prove that the defendant owed substantial income
> tax or willfully attempted to evade or defeat such tax.[51]

In this charge, the government argues, the court made clear that a
willful failure to file a return or pay taxes — without some
additional affirmative effort "to evade or defeat" the tax — would
be insufficient to support a conviction for felony tax evasion.  We
agree.

The district court's instructions made clear that, to convict
Nolen of tax evasion, the jury had to find that the government
proved all seven elements of tax evasion, including both the
failure to file a tax return and an attempt to evade or defeat the
federal income tax by willfully concealing income.  The district
court also made clear that, if the jury did not find willful
concealment, it could convict Nolen only on the lesser offense of
willfully failing to file an income tax return.  We are satisfied
that the district court's instructions effectively communicated to
the jury that a mere failure to file could not satisfy the willful
concealment element of the felony tax evasion offense.

2.    Material Variance

---

[51] Emphasis added.

33

Nolen also maintains that the jury instructions constructively amended the indictment to reach acts of concealment other than the one alleged, and that this constituted plain error. The indictment charged that Nolen "willfully attempted to evade and defeat the income tax due and owing by him ... by failing to make an income tax return [when due] ..., by failing to pay ... said income tax, and by concealing his income by placing funds, which constituted his income, in bank accounts that appeared to be controlled by a third party, but which bank accounts were, in fact, controlled by defendant." Nolen insists that, as the indictment alleged only one affirmative act of concealment, viz., the use of the third-party bank accounts, the instructions did not limit to evidence of Nolen's use of such bank accounts the kind of "concealing" that the jury could find to support a conviction. He notes that the government presented testimony from his office manager that Nolen had instructed her to give all cash receipts directly to him rather than depositing them. He contends that the jury might have based its determination of the concealment element of tax evasion on this secreting of cash income rather than on the bogus deposits to third-party bank accounts, the only method of concealment alleged in the indictment.

The government responds that, although the instructions did not expressly limit the jury's consideration to willful concealment of income accomplished by the placing of funds into third-party

bank accounts, as alleged in the indictment, neither did they expressly instruct the jury that it could convict based on different acts of concealment.  The government further advances that the reference to the cash receipts was brief, was only made in passing, was not the focus of the government's case, and was not prejudicial in the overall context of the extensive and overwhelming evidence and argument regarding the bank accounts.  We agree.

Nolen's office manager testified at trial for just under an hour.  The allegedly prejudicial exchange lasted less than a minute, while the prosecutor was questioning her regarding Nolen's business bank account, specifically whether all of the receipts from Nolen's dental practice were transferred to that account.  The office manager indicated that they were, and the government sought to clarify that Nolen actually had instructed the office manager to give any cash receipts directly to him.  The office manager confirmed this and also established that such cash receipts totaled approximately $1,000 per month.  At that point, the government returned to its line of questioning about the third-party bank account scheme employed by Nolen to conceal his income.

Even if we assume arguendo that the district court did err in failing to caution the jury to consider only the evidence of concealment involving bank accounts, we would remain convinced that, given the extended and overwhelming evidence presented by the

35

government regarding the bank account scheme, the brief clarifying testimony of Nolen's office manager about cash receipts was in no way prejudicial and certainly does not provide a basis for reversal of Nolen's conviction under the plain error standard.

D.   Restitution

The district court imposed a $60,000 fine and also ordered restitution as a separate term of Nolen's sentence, under 18 U.S.C. § 3663.   Nolen does not object to the fine but contends that restitution is not authorized by that statute.   Nolen did not raise this objection at sentencing, but because he is claiming that this element of his sentence is illegal, we review it de novo.[52]

Restitution is not allowed under § 3663 as part of the sentence in a federal tax evasion case.[53]   Restitution to the IRS may be imposed as a condition of supervised release under § 3583, but only if "the specified sum of taxes . . . has [] been acknowledged, conclusively established in the criminal proceeding,

---

[52] See  United States v. Del Barrio, 427 F.3d 280, 282 & nn. 3-4 (5th Cir. 2005)(citations omitted)(recognizing that an illegal sentence always constitutes plain error).

[53] United States v. Stout, 32 F.3d 901, 905 (5th Cir. 1994)("the restitution statute permits such separate orders only when the defendant's offense is an offense under either Title 18 or Title 49"). Even if restitution were authorized under § 3663, it would be limited to only the "loss" associated with the counts of conviction.  United States v. Campbell, 106 F.3d 64, 69-70 (5th Cir. 1997)("relevant conduct" provisions of guidelines are inapplicable to determination of amount of restitution).   Based on the years of conviction, the tax loss computed at trial was $223,509, but the district court imposed restitution for Nolen's unpaid taxes going back to 1992 ($453,275).

36

or finally determined in civil proceedings."[54]   As the exact amount of taxes owed by Nolen was not conclusively established at trial, restitution was inappropriate under § 3583 as well.   In addition, the district court's order that Nolen "comply with any IRS requirements to pay delinquent taxes and penalties according to the schedule of payments that the IRS imposes" should serve the same purpose as restitution.   Accordingly, we reverse the district court's order of restitution and remand for resentencing consistent with this opinion.

### III.   CONCLUSION

For the foregoing reasons we hold that (1) the evidence adduced at trial was sufficient to establish the charged offense, (2) the district court did not commit plain error by failing to require the jury to find an affirmative act other than willful failure to file tax returns or to require the jury to find precisely the same affirmative act of evasion as the one charged in the indictment, (3) the district court erred by imposing restitution as part of Nolen's sentence, and (4) the district court erred in failing to demonstrate on the record that, in revoking the pro hac vice admission of Nolen's retained counsel, it first balanced the Sixth Amendment rights of the defendant against the societal need for ethical practice and respect for the judicial

---

[54]   United States v. Touchet, 658 F.2d 1074, 1076 (5th Cir. 1981).

system and the judges and courts thereof. But for our inability to review this issue absent an explication of balancing by the trial court, we would affirm Nolen's conviction. Inasmuch as this hiatus prevents our either affirming or reversing Nolen's conviction until we can review his Sixth Amendment challenge, we remand to the district court for the limited purpose of its conducting the necessary balancing test between Nolen's right to counsel of his choice and the public interest in maintaining the integrity of and respect for the judicial process.

If, on remand, the district court should determine that Nolen's Sixth Amendment right outweighed the court's interest in maintaining the standards of ethics of lawyers practicing before it and thus the integrity of the judicial system, the court shall vacate Nolen's conviction and grant him a new trial. But, if the court determines that the need to revoke the right of Nolen's counsel to practice before it was the proper and least intrusive sanction required to maintain the integrity of the justice system and that it outweighed Nolen's right to be represented by this particular lawyer, requiring Nolen to retain yet another attorney of his choosing, the conviction will stand affirmed and the district court shall resentence Nolen, albeit without assessing restitution.

As our remand to the district court is thus a limited and conditional one, this panel retains appellate cognizance over the

case for our further review following that court's rulings on remand — unless the district court should grant Nolen a new trial, in which case his conviction and sentence shall be vacated, _ipso facto_. Absent such vacatur and grant of a new trial, however, the case shall be returned to this panel for further consideration of the Sixth Amendment issue post-balancing, as well as the new sentence imposed.

CONVICTION CONDITIONALLY AFFIRMED SUBJECT TO LIMITED REMAND; SENTENCE VACATED AND REMANDED FOR RE-SENTENCING, DEPENDING ON THE RESULTS OF THE DISTRICT COURT'S BALANCING EXERCISE.

A true copy
Attest:

Clerk, U. S. Court of Appeals, Fifth Circuit

By
Deputy
New Orleans, Louisiana

# *United States Court of Appeals*

### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**CHARLES R. FULBRUGE III**
**CLERK**

TEL. 504-310-7700
600 S. MAESTRI PLACE
NEW ORLEANS, LA 70130

December 12, 2006

Mr David Maland, Clerk
Eastern District of Texas, Sherman
United States District Court
216 Federal Bulding
Sherman, TX 75090

No. 05-40859 USA v. Nolen
USDC No.  4:03-CR-117-ALL

Dear Mr Maland:

We are enclosing a certified copy of an opinion-order entered by
the court today. We will hold this case in abeyance for 60 days
from the above date pending disposition of the remand
proceedings.

We will forward the record on appeal at a later date.

Sincerely,

CHARLES R. FULBRUGE III, Clerk

By: _Joseph M Armato_
Joseph Armato, Deputy Clerk

Enclosure
cc:  Honorable Richard A Schell
     Mr Peter Goldberger
     Ms Terri Lynn Hagan
     Mr Alan L Hechtkopf
     Mr Samuel Robert Lyons